UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 1:20-cr-252 |
| | : | |
| v. | : | (Judge Wilson) |
| | : | |
| RISHI BUDHADEV, | : | (Filed Electronically) |
| Defendant. | : | |

GOVERNMENT SENTENCING MEMORANDUM

The defendant should not receive credit for acceptance of responsibility, and his Guidelines range should therefore be 87 to 108 months based on an offense level of 29. Despite this Guidelines range, the government respectfully recommends a sentence of 63 months based on the Section 3553(a) factors. This sentence is sufficient but not greater than necessary. Rishi Budhadev committed serious fraud, frivolously denies conduct for which he is clearly responsible, and therefore needs a stiff sentence. Even to the extent that the defendant takes issue with the application of certain Guidelines provisions, he would have no basis to complain about a sentence of that length, which represents a significant downward variance.

The defendant pleaded guilty to conspiracy to commit wire fraud. He pleaded guilty because he is guilty. Furthermore, he pleaded guilty

because he knows—and has long known—that the flimsy defenses he now raises would have done him no good at trial. Instead of showing the courage of his supposed convictions, he has instead decided to plead guilty in an attempt to mitigate the damage of what would have been a conviction at trial while continuing to raise the same flimsy defenses at sentencing. In a nutshell, the defendant admits a tiny portion of the conduct alleged in the indictment while denying nearly all of it outright. But if the Court believes that it is more likely than not that Budhadev committed the rest of the alleged conduct, then the defendant is responsible for over $550,000 in victim losses, with a 14-point increase in the Guidelines offense level.

    The Government is not going to rehash all of the evidence that it presented at the loss hearing in November, which would not be a good use of anyone's time. The Court faces a relatively simple choice: either to believe that the evidence shows what it appears to show, which is that Rishi Budhadev committed a great deal of fraud within a few months' time in 2015, or instead that Rishi Budhadev was the victim of a massive and seemingly inexplicable conspiracy to frame him as a fraudster. The Government submits that the correct outcome is the one

that does not require engaging in wild speculation about the actions of others based on nothing other than the defendant's say-so.

The defendant has not "clearly demonstrate[d] acceptance of responsibility for his offense" and, furthermore, did not plead guilty in a timely fashion. *See* U.S.S.G. § 3E1.1. With respect to timeliness, the government had already reserved witnesses for a trial on the date certain of November 14, 2022, and had begun discussing the substance of trial testimony with certain witnesses, when the defendant, through counsel, informed the Court and the government on September 21, 2022 that he intended to plead guilty. This information was conveyed during a status conference with the Court. Nearly two weeks prior, the government had inquired whether the defendant had made a decision on whether to plead guilty or proceed to trial, and it received no response. As a result, the government continued to plow ahead toward trial, just as it had told the defendant it would do in the face of this continued uncertainty.

The defendant's sentencing arguments demonstrate that he is not only remorseless but also that he resides in an alternate reality. For instance, he claims, inaccurately, that the "government's sole evidence

of Mr. Budhadev's involvement in this scheme is a list of transactions reportedly obtained from MoneyGram and Western Union."[1] Doc. 82 at 7. Even though, for example, then 72-year-old scam victim C.S. of Williamsport, PA sent a MoneyGram money transfer to Rishi Budhadev in his name, and even though it was picked up in the form of a money order by someone using Rishi Budhadev's actual Indian passport number (as noted on the money order itself), and even though the money order was then deposited into a Wells Fargo account that Rishi Budhadev himself opened and controlled, and even though the funds were then transferred from one of Rishi Budhadev's Wells Fargo bank accounts to another Wells Fargo bank account that Budhadev himself

---

[1] The defendant raises other objections to the government's evidence, including that "the government declined to offer a single witness to even authenticate the MoneyGram and Western Union data." Doc. 82 at 7. The MoneyGram and Western Union data are consummate business records, for which no live witness is necessary for authentication under the Federal Rules of Evidence. *See* Fed. R. Evid. 902(11). Moreover, this is data that the defendant has now had for over two years. If there was some question as to whether this data was legitimately the transactional data maintained and produced by those companies in the normal course of business, the defendant could have, and should have, raised this concern with the government long before the recent loss hearing. Finally, if the defendant really questions the authenticity of this transactional data, why does he cite it so liberally in his sentencing memorandum?

opened and controlled, and even though the second account was the same one through which Budhadev admitted to conducting a fraudulent $9,000 transaction, and even though the money was then withdrawn in cash in person at the very Wells Fargo branch where Budhadev opened the accounts (which again required a photo ID), and even though that Wells Fargo branch was located in the same shopping plaza of the hotel that Budhadev listed as his home address, and even though Budhadev now admits to staying at that hotel, Doc. 82 at 13, Budhadev's response is the almost flippant, "Any person with Mr. Budhadev's ID information and bank account number (such as his ex-wife) could have completed this transaction." Doc. 82 at 18.

The defendant's sentencing memorandum thus vividly displays him to be a "defendant who false denies, or frivolously contests, relevant conduct." *See* U.S.S.G. § 3E1.1, cmt. 1(A). There is simply no plausible basis for Budhadev to deny his involvement in the foregoing set of transactions, which relates to Count 2 of the indictment, in light of his guilty plea to substantially related and deeply intertwined conduct.

Normally, proffered statements by the defendant would not be admissible in a proceeding such as this one; however, the defendant

has, in his sentencing memorandum, violated the proffer agreement. He has, "through counsel, present[ed] a position inconsistent with the proffer," thus allowing the government to use his own statements against him. Ex. 1, ¶ 4 (Executed Proffer Letter Agreement). During his proffer, the defendant was specifically shown Government Exhibit 15 from the November loss hearing, and he was asked to confirm whether each of the Wells Fargo deposit slips in that document contained his handwriting and signature. He admitted that both the $9,000 withdrawal slip from October 29, 2015 and the $4,000 withdrawal slip from November 3, 2015 contained his handwriting and his genuine signature. Ex. 2 (relevant notes of former U.S. Postal Inspector Michael J. Corricelli). Now, in his sentencing memorandum, Budhadev denies conducting the $4,000 cash withdrawal, arguing that he is only responsible for $3,600 in MoneyGram money transfers and for the $9,000 in cash that funded his withdrawal on October 29, 2015. This is yet another example of a frivolous denial of relevant conduct under U.S.S.G. § 3E1.1.

The defendant's sentencing memorandum contains a litany of factual claims that are simply at odds with the evidence before the Court and further demonstrate his disconnection from reality. Among other things, Budhadev attempts to claim that he was only in Richmond on weekends, when his father would bring him to see his then wife. It would be interesting to know, then, how it is that local police in Richmond questioned him on *Monday*, December 28, 2015. *See* Ex. 3.

Bank records, all of which were extensively discussed at the loss hearing, show that Budhadev opened numerous bank accounts *in Richmond* in 2015. Furthermore, the defendant used a Richmond address when opening several accounts, including the Wells Fargo accounts that he opened on *Tuesday*, September 8, 2015. The defendant even changed his address from Fredericksburg to Richmond for existing bank accounts at Bank of America around November 2015. The Bank of America records likewise show a migration in activity from Fredericksburg to Richmond between mid-August and early September 2015. Budhadev's response is simply to ignore inconvenient facts of this kind.

The polygraph examination administered on Budhadev, which supposedly showed him to be not deceptive, bears no indicia of reliability. It was conducted without any prior notice to the government by an examiner paid by the defendant. The defendant could therefore agree to participate with the comfort of knowing that only friendly company was present and that a negative outcome was entirely without consequence. The examination was not recorded, so there is no way to verify anything that was supposedly done. The polygrapher's documentation of the examination omitted numerous key details, such as the times when the various phases of the examination started and stopped and what questions were asked during the pre-test interview.

Indeed, the report omitted perhaps the single most important detail of all. The defendant apparently admitted to conducting eight specific MoneyGram transactions within a one-week time frame in October 2015, but the polygrapher did not believe it was important to record which ones Budhadev admitted to or how Budhadev could remember the specific transactions, number of transactions, or dollar value of those transactions seven years after the fact. This lack of attention to detail is not surprising. During cross-examination at the

loss hearing in November, the defendant's polygrapher was asked whether he was in the courtroom when the government went through its factual presentation. He responded, "Yes, but it was kind of boring. I'm not a numbers guy. The spreadsheets are," and he left the thought unfinished. He added, "It was a challenge." Loss Hearing Tr. at 162:4-11. In other words, the polygrapher had no interest in the sort of details that underpin a financial fraud case of this kind. He said so unabashedly, without any prompting.

The core of the polygrapher's examination was two questions premised on Budhadev's admission to conducting those eight specific transactions: "Other than what you told me, did you make any of those transactions?," and "Other than what you told me, did you make any of those transactions on that spread sheet?" Budhadev reportedly answered "no" to both of those questions. Of course, if Budhadev were asked about any specific transactions today, he could literally deny "making" any of the ones that he previously admitted to, because there is no record of what he said. This is a textbook example of expert opinion testimony that should be given no weight because it is simply unreliable.

The defendant's sentencing memorandum curiously omits any discussion of one of the subjects that occupied a large part of his factual presentation at November's loss hearing, namely, his alleged trip to Niagara falls in November 2015. Perhaps Budhadev decided to abandon this alibi because he realized that it actually tended to reinforce that it was the defendant himself conducting the alleged MoneyGram transactions, rather than some mysterious impersonator. Budhadev provided an invoice showing that he stayed at a Sleep Inn in Rockville, MD on the night of November 7, 2015. It thus makes sense that MoneyGram did not record him conducting any money transfer pickups between the afternoon of November 5, 2015 and the morning of November 9, 2015.

The defendant claims, without any support, that this fraud scheme was carried out not by him but by his estranged ex-wife Pooja and "her associates." Doc. 82 at 1. He claims that she is now "married to a man named Arpit Shah, whose name appears many times in documents associated with this case." Doc. 82 at 3. The defendant cites no such documents, so it is unclear what records he is referring to. The reality is that all of the documents—including all of the documents

bearing Budhadev's unique identifiers, such as his Indian passport number, his U.S. visa identification number, and his unmistakably distinctive signature—point to only one individual, which is Rishi Budhadev. Indeed, that is a significant reason why the government chose to prosecute him.

The defendant appears to theorize that his ex-wife and her associates, including the individual that Budhadev now claims, without any proof, is her current husband, essentially lured Budhadev to the United States in the fall of 2015 so that they could make it appear that Budhadev was acting as a prolific money mule and have a scapegoat in the event that the fraud scheme was detected. This story is farfetched in countless ways.

Budhadev has admitted to participating knowingly in a scheme to defraud victims who were sending him MoneyGram money transfers and making large cash deposits into his bank account based on false representations made to them. He has admitted to opening bank accounts in September 2015 and using one of these accounts knowingly to receive a $9,000 cash deposit from a fraud victim. He has admitted to withdrawing this cash the very same day that it was deposited and

11

taking those fraud proceeds in person to India in February 2016 to deliver to a coconspirator, even after being arrested and spending a lengthy time period in prison. Budhadev concealed the existence of this $9,000 from law enforcement during the period of his arrest and likewise concealed the iPhones that he purchased using the proceeds of the fraudulent MoneyGram money transfers he received in October 2015. In short, Budhadev is an admitted fraudster, plain and simple.

Despite all of these facts, and despite the lack of any substantiation that his ex-wife had any knowing involvement in fraud, Budhadev wants the Court to believe that he was a doe-eyed naïf while his ex-wife was a sinister criminal mastermind who set him up. As the Court is well aware, there are sadly more than enough willing money mules in the United States who can perform the same kind of fraud that Budhadev knowingly carried out in 2015. It is therefore puzzling to contemplate why Pooja would have done what Budhadev now claims that she did.

The two-point enhancement under U.S.S.G. § 2B1.1(b)(10) applies because the offense conduct, based on the defendant's own statements during his guilty plea, occurred explicitly at the direction of fraudsters

based in India. Therefore, a substantial part of the fraud scheme—namely, the planning, organization, and direction—all occurred outside the United States. Because of the straightforward application of this Guidelines provision, the government need not address whether this offense also involved sophisticated means. If that becomes necessary, the government will do so at the defendant's sentencing hearing.

No minor role reduction is appropriate. On this point, the *Patel* case cited favorably by the defendant in his own sentencing memorandum is instructive. *See United States v. Patel*, 746 Fed. Appx. 569, 571–72 (7th Cir. 2018) (unpublished) ("[T]he amounts of money that moved through his hands also gave him a good appreciation of the scope of the scheme."). Even more importantly, the defendant's argument is based on a misleading representation of the parties' negotiations and should thus be rejected.

It has been repeatedly claimed in court filings that the government told Budhadev and defense counsel that a reduction for a minor role was appropriate. The government takes exception to the defendant's after-the-fact attempt to cherry-pick plea negotiations for what he claims, inaccurately, to be the government's position. The

parties engaged in extensive plea discussions before the defendant to decided to plead open to Count One of the indictment. As the Court knows very well, there are many things that get said during plea negotiations—including, at times, key concessions by defense counsel—and this case was no exception to that. It is easy but generally misleading to take a statement out of context and to present it in isolation, and that is precisely what the defendant is now doing. Suffice it to say that the minor role reduction is not appropriate here for a wide array of reasons, and nothing in the defendant's sentencing memorandum changes that fact.

Considering the foregoing discussion and the Section 3553(a) sentencing factors, a sentence of 63 months is appropriate. The conduct that the defendant engaged in was awful. One would not know that from reading his sentencing memorandum, which is more concerned with the "ordeal" that he has been through. Doc. 82 at 37. When dealing with a defendant like Budhadev, who fails to demonstrate remorse and makes frivolous sentencing arguments, one must question whether he is the type of person who has really looked himself in the mirror and can

be trusted to follow the law in the future. Nothing that he has said or done gives the government any comfort in that regard.

Though the defendant is not personally deserving of a downward variance, a sentence of 63 months is sufficient but not more than necessary under the circumstances of this particular case. A sentence of 63 months sends a strong message of both personal and general deterrence, particularly to defendants who take the opportunistic approach to pleading guilty that Budhadev has taken. At the same time, because Budhadev will be deported upon release from prison, it is not necessary, in this case, to impose a sentence within the Guidelines range. After serving an additional term of approximately two years in a

BOP facility, he will be released to his home country, hopefully never to return to the United States again.

Dated: January 12, 2024          Respectfully submitted,

GERARD M. KARAM
United States Attorney

/s/ Ravi R. Sharma
Ravi Romel Sharma
Assistant U.S. Attorney
PA 331135
1501 N. 6th St, Box 202
Harrisburg, PA 17102
Tel: (717) 221-4482
Fax: (717) 221-4493
ravi.sharma@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on January 12, 2024, I served the foregoing document by electronic service on the following individual:

Sarah Hyser-Staub, Esq.
sstaub@mcneeslaw.com

/s/ Ravi R. Sharma
Ravi Romel Sharma
Assistant U.S. Attorney